## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CASEY JANE HARRELL** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 19-2809** |
| | : |
| **SOLEBURY TOWNSHIP** | : |

## MEMORANDUM

**KEARNEY, J.**                                                    **February 20, 2020**

Employers may not refuse to hire a qualified job applicant because she is pregnant, in retaliation for being pregnant, or because of her new additional maternal obligations to her newborn child. A part-time police officer disappointed in her police chief choosing two other part-time women to become full-time officers eight months after delivering her child now claims the employer did not hire her as a full-time officer because her earlier pregnancy and present obligations as a primary caretaker for a young child distorted her performance metrics. She concedes her performance fell short of the two competing part-time women officers selected for the full-time position for well over a year before the hiring decision. The employer offers legitimate performance metrics partially guiding its decision which, by definition, may not fully account for an officer's familial obligations. We appreciate the officer is disappointed and possibly angry her employer chose two women without present obligations to young children over her even though she worked there for a longer time, became pregnant, and then cared for her child which may have caused her performance to fall below the two other part-time women officers. But her disappointment does not automatically equal discriminatory intent. The employer chose part-time officers with stronger performance records. We cannot find inconsistencies allowing an inference of pretext necessary for our jury's consideration. For example, the disappointed officer did not adduce evidence her performance before her pregnancy and child obligations equaled or exceeded

performance from the two part-time women officers selected for a full-time position. She also faced pre-pregnancy disciplinary measures from her employer while the other two women did not from this employer. Following extensive discovery, the part-time officer must adduce more than conclusory arguments fueled by understandable disappointment. She needs to adduce evidence of discrimination led her employer to hire two other women who admittedly outperformed her. After carefully parsing the submitted record, the part-time officer fails to adduce evidence creating a genuine issue of material fact for our jury's consideration. We must grant the employer's motion for summary judgment.

## I.    Undisputed facts[1]

Solebury Township hired Casey Harrell on May 1, 2016 as a part-time police officer for its police department.[2]  About a year later on May 5, 2017, Sergeant Marc Mansour issued a counseling memo to Officer Harrell for tardiness.[3]  Sergeant Mansour warned Officer Harrell further tardiness will result in formal disciplinary action.[4]  A little over four months later on September 22, 2017, Sergeant Mansour documented verbal counseling given to Officer Harrell for two other incidents of her delayed response time to priority calls.[5]

In November 2017, Officer Harrell told Police Chief Dominick Bellizzie of her pregnancy.[6] Officer Harrell requested and received her rights under the Family Medical Leave Act ("FMLA")[7] and forms for her doctor to complete.[8]  Before beginning her leave, Officer Harrell requested and received light duty work because of her pregnancy, including answering phones, taking walk-in reports and other non-patrol duties.[9]

Officer Harrell began a twelve-week FMLA leave on March 30, 2018.[10]  On May 29, 2018, the Township advised Officer Harrell her twelve-week leave expired on June 23, 2018 and it expected her return to work as a part-time officer.[11]  Officer Harrell returned to work on June 23,

2

2018.[12] Upon her return to work, Officer Harrell told Chief Bellizzie she wanted to be considered for a full-time position.[13] Chief Bellizzie told Officer Harrell he would like to see her police activity improve.[14]

Almost eighty days later on September 18, 2018, Chief Bellizzie appeared at a Solebury Township Board of Supervisors' meeting to discuss budgeting for the Township Police.[15] Chief Bellizzie told the Board he needed two additional full-time officers for the police department because "[w]e have no relief … here in this department" and, "[a]s soon as somebody takes off, our men, our personnel, the amount of people we can put on the street is at a minimum."[16] He explained the department is "all-male" and there are "three female officers part-time now that are excellent that we can draw some from."[17] Officer Harrell concedes she is one of the part-time officers referred to by Chief Bellizzie during the Board meeting.[18]

At some point after the September 18, 2018 Board meeting, the Township authorized the hiring of two additional full-time police officers. Chief Bellizzie has the sole authority to hire part-time and full-time officers for the Township.[19] In preparing to fill the two full-time positions, Chief Bellizzie decided all six part-time officers employed by the Township would be considered as the "applicant pool": Officer Harrell, Robert Stewart, Michael Rodgers, Gina Ferzetti, Megan Klosterman, and Dominick Belisari.[20] Officers Harrell, Gina Ferzetti, and Megan Klosterman are female. Officers Robert Stewart, Michael Rodgers, and Dominick Belisari are male.

Chief Bellizzie scheduled a meeting to evaluate the candidates with police department supervisors Sergeant Kevin Edwards, Sergeant Mansour, Corporal Aaron Soldavin, Corporal Marascio, and Detective Corporal Jonathan Koretzky.[21] To prepare for this evaluation meeting, Chief Bellizzie requested the police department's records clerk compile statistics of each part-time officer from January 1, 2015 through September 30, 2018.[22] Chief Bellizzie swore he did not share

3

the statistics with the department supervisors; he prepared it for his own use "to look at all the officers' activity, their shifts, and just to get a general feeling for each officer" and to be prepared "in case there [were] questions from my staff when we were going through it."[23] Officer Harrell contends Chief Bellizzie's statistics are "an unsubstantiated, unreliable, self-serving mechanism to justify the decision to hire" Officers Klosterman and Ferzetti.[24] Officer Harrell contends the statistics did not take into account officers who were on night patrol where there is less traffic and did not adjust for her pregnancy including light duty before taking her FMLA leave.

Chief Bellizzie and department supervisors discussed each candidate and voted on which of the part-time officers should be hired to the two full-time positions.[25] Officer Klosterman received five votes in favor of hiring; Officer Ferzetti received three votes; Officer Stewart received two votes; and Officer Harrell received two votes.[26] The Township contends Chief Bellizzie and the department supervisors did not consider Officer Rodgers because of his recent resignation from the Township's police force and did not consider Officer Belisari because he had only been employed with the Township for a few months.[27]

Chief Bellizzie notified the Township Manager on December 13, 2018 of Officer Ferzetti's promotion from part-time to full-time officer effective January 1, 2019.[28] Chief Bellizzie notified the Township Manager on January 8, 2019 of Officer Klosterman's promotion from part-time to full-time officer effective February 1, 2019.[29] Neither of these female officers were pregnant at the time of their promotions.

Officer Harrell sued Solebury Township on June 26, 2019. She alleged the Township interfered with her FMLA leave and retaliated against her for taking FMLA leave, and discriminated and retaliated against her because of her sex and pregnancy in violation of Title VII,

4

42 U.S.C. § 2000e, *et seq*.[30] After the Township moved for summary judgment, Officer Harrell withdrew her FMLA claims.[31]

Officer Harrell seeks to permanently enjoin the Township from engaging in discrimination against her and prohibit it from "continuing to maintain its illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination ...", as well as back pay, front pay, damages for pain, suffering, and humiliation, punitive damages, other equitable and legal relief the Court deems appropriate, costs and expenses, a molded verdict, and additional injunctive relief.[32]

## II. Analysis[33]

Officer Harrell alleges the Township "engaged in unlawful pregnancy and gender discrimination" in violation of Title VII. She alleges the Township treated other similarly situated non-pregnant officers more favorably.[34]

The Township seeks summary judgment on the Title VII pregnancy discrimination claim arguing she fails to establish a *prima facie* case of discrimination. It seeks summary judgment on her sex discrimination claim arguing she fails to establish a *prima facie* case and, even if she did, she cannot show pretext. In response, Officer Harrell contends she satisfies a *prima facie* case of pregnancy discrimination as well as now arguing "sex-plus discrimination based on familial responsibilities."[35] She never raised this sex-plus theory before.

Officer Harrell may not proceed on either the discrimination or retaliation claim. She cites no evidence creating a genuine issue of material fact under either Title VII discrimination theory. Officer Harrell elected to not respond to the Township's arguments on her Title VII retaliation claim. She adduced no evidence of retaliation under Title VII. As she fails to meet her burden in

5

response to summary judgment, we enter judgment in favor of the Township on the Title VII retaliation claim.

## A. We enter summary judgment in favor of the Township on Officer Harrell's Title VII discrimination claims.

Title VII prohibits discrimination "because of" or "on the basis of" sex, among other protected classes.[36] In 1978, Congress enacted the Pregnancy Discrimination Act amending Title VII's definition section to define the terms "because of sex" or "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, … as other persons not so affected but similar in their ability or inability to work … "[37] Pregnancy discrimination cases are evaluated under the same framework as other Title VII intentional sex discrimination cases.[38]

"Sex-plus" discrimination is prohibited by Title VII. The Supreme Court in *Phillips v. Martin Marietta Corp.*[39] recognized a "sex-plus" theory allowing "employees to advance a gender discrimination claim even if all members of the gender are not discriminated against."[40] "[A]n employee who treats women with small children differently than women without small children would be liable for sex-plus discrimination; with the 'plus' being stereotypical assumptions regarding women's childcare responsibilities."[41] Sex-plus discrimination "is simply a form of gender discrimination" and "[t]he relevant inquiry under either theory is whether the plaintiff presents evidence of sex discrimination sufficient to create a genuine issue of material fact."[42]

We apply the burden-shifting *McDonnell Douglas* framework to Officer Harrell's Title VII pregnancy discrimination and "sex-plus" discrimination claims.[43] Under the *McDonnell Douglas* framework, Officer Harrell must first establish a *prima facie* case of pregnancy discrimination by showing (1) she is or was pregnant and her employer knew of the pregnancy; (2) she is qualified

6

for the job; (3) she suffered an adverse employment decision; and (4) there must be some nexus between her pregnancy and the adverse employment action to permit a fact-finder to infer unlawful discrimination.[44] "The difference between pregnancy and sex discrimination claims is that pregnancy discrimination claims require an employer's knowledge, or an inference of knowledge, of pregnancy."[45]

To establish a *prima facie* case of sex-plus discrimination, Officer Harrell must show (1) she is a woman with young children; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated women without young children were treated more favorably, or the circumstances of her [adverse employment action] otherwise give rise to an inference of discrimination.[46]

If Officer Harrell establishes a *prima facie* case, the burden shifts to the Township to provide a legitimate, non-discriminatory reasons for its action. If the Township does so, the burden shifts back to Officer Harrell to show pretext. To show pretext, Officer Harrell "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[47] Officer Harrell's evidence, if it relates to the credibility of the Township's proffered justification, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[48] If Officer Harrell "come[s] forward with sufficient evidence to allow a finder of fact to discredit [the Township's] proffered justification, [she] need not present additional evidence of discrimination beyond [her] *prima facie* case to survive summary judgment" because "the factfinder may infer from the

7

combination of the *prima facie* case, and its own rejection of [the Township's] proffered reason, that [it] engaged in the adverse employment action for an invidious reason."[49]

## 1. Officer Harrell fails to establish a prima facie case of pregnancy discrimination and sex-plus discrimination.

The Township argues Officer Harrell fails to establish the second and fourth elements of the *prima facie* case—qualified for the full-time position and nexus between her pregnancy and/or sex and the adverse action. The Township makes essentially the same argument on Officer Harrell's failure to show a *prima facie* case of sex discrimination. Although she generally plead "unlawful pregnancy and gender discrimination" in her amended complaint, Officer Harrell now shifts to argue the adduced evidence requires fact finding on her sex-plus discrimination claim.[50] As explained earlier, sex-plus discrimination is a form of gender discrimination under Title VII. Although the elements of a sex-plus discrimination claim are slightly different—there must be a showing similarly situated women without young children are treated more favorably or the circumstances of the adverse action otherwise give rise to an inference of discrimination—we analyze her claims as sex discrimination under Title VII. Both parties make the same arguments for each theory of Title VII discrimination. In response to the Township's summary judgment motion, Officer Harrell argues she satisfies a *prima facie* case of pregnancy discrimination and sex-plus discrimination for the same reasons.

### *Officer Harrell meets her burden to show she is qualified for the full-time position.*

Under the second prong of the *prima facie* case for both pregnancy and sex-plus discrimination, Officer Harrell must show she is qualified for the full-time position. The Township argues she is not qualified and cannot make out a *prima facie* case of discrimination. Offer Harrell responds she is qualified to be a full-time officer. She argues she is familiar with the community, "kn[ows] the law well, has a good rapport with the neighborhood, and properly exercises her

8

discretion."[51] She simply argues she "had longevity in the Police department [and] was sufficiently qualified to satisfy" the second element of the *prima facie* case.

The Township's argument on her qualifications is more properly considered under the pretext analysis. At the *prima facie* stage, we consider only "***objective*** job qualifications."[52] We are instructed by our Court of Appeals "the question of whether an employee possess a ***subjective quality***, such as leadership or management skill, is better left to the later stage of the *McDonnell Douglas* analysis" because "subjective evaluations are more susceptible of abuse and more likely to mask pretext."[53] "[T]o deny the plaintiff an opportunity to move beyond the initial stage of establishing a *prima facie* case because [she] has failed to introduce evidence showing [she] possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext."[54]

Where, as here, the Township's argument regarding Officer Harrell's "qualifications is intertwined with its assertion of a legitimate reason for the employment action, [we] should be careful not to 'collapse the entire *McDonnell Douglas* analysis in [the] first step.'"[55] The Township does not argue Officer Harrell fails to meet some ***objective*** qualification. It must have considered Officer Harrell objectively qualified for the full-time position because it considered her in the applicant pool along with the other part-time candidates. The Township argues its decision to promote Officers Ferzetti and Klosterman is because of the quality of their police work, superior productivity, and lack of workplace disciplinary action as compared to the other part-time candidates. We attribute this to the Township's articulated legitimate reasons for its promotion of Officers Ferzetti and Klosterman over Officer Harrell more properly considered in a pretext analysis. "The burden of establishing a *prima facie* case is not meant to be onerous ..." and Officer Harrell meets her burden to show she is qualified for a full-time position.[56]

9

### *Officer Harrell fails to satisfy the causation prong for a prima facie case.*

On the causation element, the Township argues Officer Harrell fails to adduce facts to establish a causal nexus between her pregnancy and the adverse employment action. Officer Harrell can satisfy the nexus element "by: (1) presenting evidence that similarly situated, non-pregnant employees were treated more favorably; (2) establishing an inference of discrimination based upon the temporal proximity between the pregnancy and the adverse act; or (3) establishing an inference of discrimination based upon review of all proffered evidence."[57]

The Township argues it did not promote similarly situated, non-pregnant part-time Officers Stewart and Rodgers; there is no temporal proximity between the time of Officer Harrell's maternity leave and the promotion of Officers Klosterman and Ferzetti; and there is no record evidence to establish an inference of discrimination. As to temporal proximity, the Township argues at least seven months elapsed between Officer Harrell's leave beginning in March 2018 and the alleged failure to promote, presumably calculating her return from FMLA leave in June 2018 and the promotion of Officers Ferzetti and Klosterman. The Township argues this timing is not unduly suggestive of an inference of discrimination because such timing is measured in days not months in this circuit.[58]

Officer Harrell responds there is "significant temporal proximity" between her pregnancy and the "adverse treatment," arguing Officer Ferzetti "presumably, had been interviewed earlier than February 2018 [and] if [Officer Ferzetti] was given an offer in December 2017, it would have only been a month after [Officer Harrell] announced her pregnancy."[59] But the challenged adverse action is not Officer Ferzetti's initial hiring; it is her promotion to a full-time position effective January 1, 2019.

10

Officer Harrell delivered her baby in April 2018 and returned to work in June 2018, eight to six months before the decision to promote Officers Ferzetti and Klosterman to full-time. Because Officer Harrell was not pregnant at or around the time of the promotion of Officers Ferzetti and Klosterman, she has an additional burden in making out a *prima facie* case.

"While some effects of pregnancy linger beyond the act of giving birth, at some point the female employee is no longer 'affected by pregnancy, childbirth, or related medical conditions,' for purposes of the [Pregnancy Discrimination Act]."[60] "When the employee is not pregnant at or around the time that she suffers the alleged adverse employment action, her membership in the protected class is less clear."[61] In such a situation, "a plaintiff who [is] not pregnant at or near the time of the adverse employment action has some additional burden in making out a *prima facie* case."[62] "Such a plaintiff must demonstrate at the *prima facie* stage, by introducing evidence sufficient to allow the case to go to a jury, that she was 'affected by pregnancy, childbirth or related medical conditions' at the time of the adverse employment action."[63] Such evidence may include "harassment or discriminatory statements by [her] supervisors began during her pregnancy or maternity leave and continued with some regularity until the adverse employment action occurred" or "she developed a medical condition during pregnancy that continued to cause problems with her job until the adverse employment action occurred."[64] "Essentially, a plaintiff who was not pregnant at or near the time she was terminated must demonstrate that the effects of her pregnancy continued to exist at the time she was terminated, either in actual fact or in the thoughts and actions of those responsible for [the adverse action]."[65]

Officer Harrell adduces no such evidence. Having failed to carry her burden to establish a *prima facie* case of Title VII pregnancy or sex plus discrimination, we enter summary judgment in favor of the Township.

11

## 2. Even if Officer Harrell established a *prima facie* case, there is no evidence of pretext.

Even if Officer Harrell established a *prima facie* case of pregnancy discrimination or sex plus discrimination, the Township argues there is no evidence its proffered reason for promoting Officers Ferzetti and Klosterman over her is pretext for discrimination. The Township proffers Officer Ferzetti's and Klosterman's work performance as the legitimate non-discriminatory reason for their promotions.

The Township cites to Chief Bellizzie's decision to select Officers Ferzetti and Klosterman based on the vote taken by the police supervisors. The Township contends the record shows it promoted Officers Ferzetti and Klosterman based on the quality of their work, superior productivity, and lack of workplace disciplinary issues as compared to the other candidates.

Officer Harrell responds the Township "cannot articulate a legitimate, non-discriminatory reason" for her "treatment."[66] She concludes, without evidence, "[t]he only possibly reason why she was not given a full-time slot was because she had been out on pregnancy leave and was now a mother of a child" and the Township's reasons for selecting Officers Klosterman and Ferzetti for the full-time positions "are not worthy of credence."[67]

But she fails to adduce evidence from which a factfinder could either disbelieve the Township's articulated legitimate reasons or believe an invidious discriminatory reason is more likely than not a motivating or determinative cause of the Township's promotion of Officers Ferzetti and Klosterman over her.[68] Although she challenges the credibility of the Township's proffered justification, she fails to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Township's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[69]

12

Officer Harrell makes several arguments the Township's proffered reasons for promoting Officers Ferzetti and Klosterman are pretext for pregnancy and sex-plus discrimination: her disciplinary record as compared to Officer Stewart; the temporal proximity between the time she announced her pregnancy to Chief Bellizzie and Officer Ferzetti's initial hiring; and the statistics relied on by Chief Bellizzie in assessing the part-time candidates.

Officer Harrell does not dispute the Township counseled her on tardiness and for delayed response times to priority calls.[70] She does not dispute the Township's explanation neither Officer Klosterman nor Officer Ferzetti had disciplinary issues as part of the reason for their promotion. She instead argues Officer Stewart's disciplinary issues "were far worse" than her disciplinary issues and "those were considered negligible in comparison with his performance."[71] She cites no record evidence comparing disparate disciplinary treatment and we do not understand how or why she compares her disciplinary issues to that of Officer Stewart who did not receive the promotion and where Officer Harrell's claim is the Township promoted Officers Ferzetti and Klosterman because they are non-pregnant and have no young children. Officer Harrell also asserts "[o]ne or two counseling's [sic] for inadvertent mistakes would never scuttle an officer's full-time prospects in the petition [sic] were genuinely once of experience, ability, judgment and discretion."[72] Officer Harrell adduces no evidence to support this argument.

Officer Harrell argues the Township excluded her from consideration after she became pregnant when it began considering hiring two full-time officers in September 2018. She concedes she "was one of the part-time officers referenced by" Chief Bellizzie in the September 18, 2018 Board of Supervisors' meeting but, "after she announces her pregnancy, two months later, she is not considered and, in her stead, without explanation, Officer Ferzetti is hired part-time and then given the full time position."[73]

13

Officer Harrell is incorrect when she argues she announced her pregnancy two months *after* the September 18, 2018 Supervisor's meeting, then "not considered" for the full-time position, and the Township hired Officer Ferzetti "in her stead." The record shows Officer Harrell told Chief Bellizzie of her pregnancy in *November 2017*; the Township hired Officer Ferzetti as a part-time police officer on February 1, 2018; Officer Harrell returned from her FMLA leave in *June 2018*; Chief Bellizzie spoke to the Board of Supervisors in *September 2018* for approval to hire two full-time officers; and the Township promoted Officer Ferzetti to a full-time position effective January 2019. She adduces no evidence the Township's initial hiring of Officer Ferzetti as a part-time officer in February 2018, seven months *before* Chief Bellizzie's appearance at the September 2018 Board meeting announcing the need for two full-time officers, has anything to do with pregnancy discrimination. Officer Harrell suggests because the Township hired Officer Ferzetti to a part-time position after she announced her pregnancy to Chief Bellizzie, an inference can be drawn the Township impermissibly discriminated against her because of her pregnancy by selecting Officer Ferzetti for the full-time position; a position not even in existence in February 2018. This does not create a nexus, Officer Harrell argues, between her pregnancy and Officer Ferzetti's promotion to full-time.

Officer Harrell contends Chief Bellizzie "improperly pressured her into getting her numbers up, which meant stopping because in the Township for various violations [sic]."[74] We cannot understand this sentence nor are we given a record citation regarding "improper pressure" exerted by Chief Bellizzie and how it creates a fact issue regarding the Township's reasons for promoting Officers Ferzetti and Klosterman.

Her best argument, again without supporting evidence, challenges Chief Bellizzie's hiring decision as based on flawed performance statistics which did not account: for officers on night

14

patrol when there is less traffic, her pregnancy, and for her light duty while pregnant. But Officer Harrell does not cite evidence which supports her position. To the contrary, the statistics confirm her understanding of Officers Ferzetti and Klosterman outperforming her at the time of the selection of full-time officers. This is not a case where the employer elected to promote an employee performing at an equal or lesser level than the employee suing. For example, Officer Harrell does not adduce evidence of her pre-pregnancy performance equal or exceeding Officers Ferzetti and Klosterman. If she had, we may be able to find issues for our jury from the change based upon statistics during the pregnancy and care for the young child.

Officer Harrell admits during Chief Bellizzie's meeting with police supervisors to evaluate the part-time candidates, he allowed every supervisor to "have their say about each of the part-time candidates."[75] Officer Harrell admits the police supervisors were aware of the police activity of each of the part-time candidates because the supervisors receive a monthly report detailing this information.[76] She also admits "only to the limited extent that 'police activity' is defined" by the Township but does not adduce evidence the Township's definition of "police activity" is flawed or discriminatory.[77] Officer Harrell argues the number of car stops should not be an indicator of successful policing and "there is much more to policing than this and she is an officer who uses her discretion enter [sic] judgment" but the Township did not "measure" these factors. While she offers interesting theories, Officer Harrell adduces no evidence or expertise to support this conclusion. She bases her theoretical claim on her say-so. She needs more to proceed to trial.

Officer Harrell also argues "[t]here was a lot of information to suggest, indirectly" the Township offered Officers Klosterman and Ferzetti the full-time positions "prior to and separate from any 'vote'" but cites no evidence in support.[78] Again without cites to adduced evidence, she argues some of the police supervisors at the assessment meeting such as Detective Corporal

15

Koretzky "cast votes for candidates with whom he had barely interacted," suggesting the police supervisors' vote somehow evidences pregnancy and sex plus discrimination.

Officer Harrell's reliance on allegedly flawed statistics is misplaced. Officer Harrell swore when she returned from FMLA leave she requested night work to accommodate her family situation and the Township honored her request.[79] After her return, Officer Harrell spoke to Chief Bellizzie regarding a full-time position.[80] Chief Bellizzie responded her activity level is low.[81] Officer Harrell knew when inquiring about full-time work Officers Ferzetti and Klosterman "are also pushing for full-time" and knew "they're out there, and they are ... putting car stop after car stop after car stop, because when you are new in the police department, that is what you do."[82] She swore "[i]f you look at anybody's numbers when they first start, that is what they do, you know, impress. And so, when he brought up my activity level, I thought he was saying, like, you know, the competition is strong, and you need to do better. I don't know whether he was talking about prior to when I was there, or when I was there now. I didn't ask him that question."[83]

Officer Harrell conceded Officers Ferzetti and Klosterman outperformed her, attributing their performance to a desire to impress, and knew the "competition is strong" for the full-time positions. Nevertheless, she attributes the Township's promotion of Officers Ferzetti and Klosterman to her pregnancy and being a mother of a young child. But she provides no evidence she outperformed Officers Ferzetti and Klosterman or any other metric showing her better performance or any evidence the Township considered her care of a young child a factor in its decision. Her failure to produce this type of evidence for any period of her employment is telling.

At bottom, Officer Harrell fails to meet her burden on summary judgment to adduce evidence of pretext. She "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or

16

(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[84] Having failed to meet her burden to adduce evidence of pretext, we grant summary judgment in favor of the Township.

## B. We enter summary judgment in favor of the Township on Officer Harrell's Title VII retaliation claim.

Officer Harrell alleges the Township failed to promote her in retaliation for taking pregnancy leave, a protected activity under Title VII.[85] The Township seeks summary judgment on Officer Harrell's retaliation claim arguing she fails to establish a *prima facie* case, and, even if she did, she cannot show pretext.

A *prima facie* case of retaliation requires Officer Harrell to establish "(1) she engaged in activity protected by Title VII; (2) the [Township] took an adverse employment action against her; and (3) there [is] a causal connection between her participation in the protected activity and the adverse employment action."[86] The Township argues no factfinder can reasonably infer a causal relationship between Officer Harrell's sex and pregnancy and the failure to promote her to the full-time position. It argues there is no temporal proximity unduly suggestive of retaliation or "time plus" evidence such as a pattern of antagonism or inconsistencies in the Township's promotion of Officers Ferzetti and Klosterman.[87]

Officer Harrell elected not to address this argument in response to the Township's summary judgment motion on the retaliation claim. At the summary judgment stage, Officer Harrell has the burden to identify facts in the record enabling her to make a sufficient showing of the essential elements of her claims. Failing to respond to the Township's argument on her Title VII retaliation claim, Officer Harrell failed to meet her burden under Federal Rule of Civil Procedure 56 mandating the entry of summary judgment.[88]

17

## C. We enter summary judgment in favor of the Township on Officer Harrell's claims for punitive damages.

The Township seeks summary judgment on Officer Harrell's claim for punitive damages.

Officer Harrell did not respond to the Township's argument on punitive damages.

As a matter of law, punitive damages are not recoverable against municipalities under Title VII.[89] We enter summary judgment in favor of the Township on Officer Harrell's claim for punitive damages under Title VII.

## III. Conclusion

In the accompanying Order, we enter summary judgment in favor of the Township on Officer Harrell's claims of pregnancy and sex plus discrimination.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Solebury Township's SUMF is docketed at ECF Doc. No. 38-4. Its appendix is docketed at ECF Doc. No. 38-5 through 38-23 and 39-2 through 39-5. References to the appendix are by Bates number, for example, "1a." Officer Harrell's response to the Township's SUMF is docketed at ECF Doc. No. 49-3.

[2] ECF Doc. No. 38-4 at ¶ 1.

[3] *Id.* at ¶ 9; ECF Doc. No. 38-13 at 135a.

[4] ECF Doc. No. 38-13 at 135a.

[5] ECF Doc. No. 38-4 at ¶ 8; ECF Doc. No. 38-12 at 134a.

[6] ECF Doc. No. 38-4 at ¶¶ 12-13.

[7] 29 U.S.C. § 2611, *et seq.*

[8] ECF Doc. No. 38-4 at ¶ 14.

[9] *Id.* at ¶ 15.

[10] Officer Harrell gave birth in April 2018. ECF Doc. No. 38-6 at 4a.

[11] ECF Doc. No. 38-4 at ¶ 18; ECF Doc. No. 38-14 at 136a.

18

[12] ECF Doc. No. 38-4 at ¶ 19. The Township accommodated Officer Harrell's request to work night shifts after her return to work. *Id.* at ¶ 24.

[13] *Id.* at ¶¶ 25, 27; ECF Doc. No. 49-3 at ¶¶ 25, 27.

[14] ECF Doc. No. 38-4 at ¶ 28.

[15] ECF Doc. No. 62-1 at 277a-308a.

[16] *Id.* at 287a.

[17] *Id.* at 288a.

[18] ECF Doc. No. 49-1 at 6.

[19] ECF Doc. No. 38-4 at ¶ 33.

[20] *Id.* at ¶ 54. Officer Harrell denies this, contending Officer Rodgers "was excluded from the applicant pool" and Officer Belisari "had no desire to go full-time." These are not facts material to the Township's motion for summary judgment as to Officer Harrell's claims.

[21] *Id.* at ¶¶ 55, 57.

[22] *Id.* at ¶ 56.

[23] ECF Doc. No. 38-7 at 38a.

[24] ECF Doc. No. 49-3 at ¶ 56.

[25] ECF Doc. No. 38-4 at ¶¶ 58-60.

[26] *Id.* at ¶¶ 69-72.

[27] *Id.* at ¶¶ 61-62. Officer Harrell disputes the Township's contention Officer Rodgers resigned, contending the Township terminated him. The dispute surrounding whether the Township terminated Officer Rodgers or he voluntarily resigned is not material to Officer Harrell's claims against the Township.

[28] ECF Doc. No. 38-22; ECF Doc. No. 38-4 at ¶ 73.

[29] ECF Doc. No. 38-23; ECF Doc. No. 38-4 at ¶ 74.

[30] ECF Doc. No. 10.

[31] ECF Doc. No. 49-1 at 8.

19

[32] ECF Doc. No. 10 at 7-9.

[33] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[34] *Id.* at ¶ 50.

[35] ECF Doc. No. 49-1 at 4.

[36] 42 U.S.C. § 2000e-2.

[37] 42 U.S.C. § 2000e(k); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015).

[38] *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 752 (E.D. Pa. 2002).

[39] 400 U.S. 542 (1971).

[40] *Weightman v. Bank of New York Mellon Corp.*, 772 F. Supp. 2d 693, 701 (W.D. Pa. 2011).

[41] *Id.*

[42] *Tingley-Kelley v. Tr. of Univ. of Pennsylvania*, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010) (citing *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009)).

[43] *Anderson v. Boeing Co.*, 694 F. App'x 84, 85-86 (3d Cir. 2017). Officer Harrell concedes her Pregnancy Discrimination Act claim is analyzed under *McDonnell Douglas*.

[44] *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365-66 (3d Cir. 2008); *May v. PNC Bank*, No. 18-2933, 2020 WL 370043, \*5 (E.D. Pa. Jan. 22, 2020) (citing *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 708 (E.D. Pa. 2012)).

20

[45] *May*, 2020 WL 370043 at *5 (citing *Turevsky v. FixtureOne Corp.*, 904 F. Supp. 2d 454, 463 (E.D. Pa. 2012)).

[46] *Weightman*, 772 F. Supp. 2d at 703 (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999)).

[47] *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 ( 3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[48] *Id.* (quoting *Fuentes*, 32 F.3d at 765).

[49] *Id.* (citations omitted).

[50] ECF Doc. No. 10 at ¶ 47.

[51] ECF Doc. No. 49-1 at 5-6.

[52] *Dorsey v. Pittsburgh Assocs.*, 90 F. App'x 636, 639 (3d Cir. 2004) (emphasis added).

[53] *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990) (internal citation omitted) (emphasis added).

[54] *Id.* at 798-99 (citation omitted); *Howell v. Millersville Univ. of Pennsylvania*, 283 F. Supp. 3d 309, 323-24 (E.D. Pa. 2017); *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 589-90 (E.D. Pa. 2013).

[55] *Cellucci*, 987 F. Supp. 2d at 590 (quoting *Dorsey*, 90 F. App'x at 639).

[56] *Id.* at 589.

[57] *Brown v. Aria Health*, No. 17-1827, 2019 WL 1745653, at *8 (E.D. Pa. Apr. 17, 2019) (collecting cases).

[58] *See e.g. Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 198 (3d Cir. 2015).

[59] ECF Doc. No. 49-1 at 8,

[60] *Solomen*, 183 F. Supp. 2d at 753 (quoting 42 U.S.C. § 2000e(k)).

[61] *Id.* at 754.

[62] *Id.* at 754.

[63] *Id.* (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).

[64] *Id.* (citations omitted).

[65] *Id.*

[66] ECF Doc. No. 49-1 at 8.

[67] *Id.* at 6.

[68] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764).

[69] *Id.* (quoting *Fuentes*, 32 F.3d at 765).

[70] ECF Doc. No. 38-4 at ¶¶ 8-9; ECF Doc. No. 49-3 at ¶¶ 8-9.

[71] ECF Doc. No. 49-1 at 8.

[72] *Id.*

[73] *Id.* at 6.

[74] ECF Doc. No. 49-1 at 5.

[75] ECF Doc. No. 38-4 at ¶ 60; ECF Doc. No. 49-3 at ¶ 60. Officer Harrell disputes Chief Bellizzie and the police supervisors discussed Officer Rodgers.

[76] ECF Doc. No. 38-4 at ¶ 63.

[77] ECF Doc. No. 49-3 at ¶ 63.

[78] ECF Doc. No. 49-1 at 7.

[79] ECF Doc. No. 38-6 at 15a.

[80] *Id.* at 15a.

[81] *Id.* at 16a.

[82] *Id.* at 17a.

[83] *Id.*

[84] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764).

[85] ECF Doc. No. 10 at ¶¶ 51-53.

[86] *Hukman v. Am. Airlines, Inc.*, No. 19-1934, 2019 WL 7369196, at \*5, n.8 (3d Cir. Dec. 31, 2019) (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)); *LeBoon*, 503 F.3d at 231.

[87] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

[88] *Celotex Corp.*, 477 U.S. at 322-23.

[89] *McIntyre v. Cnty. of Delaware*, No.18-5066, 2019 WL 3934914 at *7 (E.D. Pa. Aug. 19, 2019) (collecting cases); *Udujih v. City of Philadelphia*, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007) (punitive damages not available against a municipality under Title VII).